UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT TONY TOTPAL,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02492-JNW<br><br>ORDER |

This matter comes before the Court on Petitioner Robert Tony Totpal's petition for a writ of habeas corpus and motion to appoint counsel. Dkt. Nos. 5, 6. The Court GRANTS IN PART the habeas petition and orders Totpal's release for the reasons below. The Court DENIES as moot the motion to appoint counsel.

## 1. BACKGROUND

Totpal is a stateless individual detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 5 ¶ 6. Totpal was born in Romania but came to the United States with his parents as refugees in 1984. Dkt. Nos. 5 ¶ 10; 10 ¶ 4. He has lived continuously in the United States since that time.

On February 7, 2006, Totpal was convicted of unlawful possession of methamphetamine in Oregon State Circuit Court for Washington County. Dkt. Nos. 10 ¶ 11; 11-2 at 3. ICE arrested and transferred Totpal to the NWIPC on October 16, 2006. Dkt. No. 10 ¶ 12. On November 29, 2006, an Immigration Judge (IJ) ordered Totpal removed from the United States to Romania. Dkt. No. 11-3 at 2. Because the Romanian Embassy declined to issue a travel document, Totpal was not deported. Dkt. No. 10 ¶ 15. On April 18, 2007, Totpal was released on an Order of Supervision ("OSUP"). Dkt. No. 11-4 at 1–5.

On June 22, 2026, Totpal reported in person to the ICE office in Portland, Oregon, as directed. There, ICE served him with a Notice of Revocation of Release, conducted an "informal interview," took him into custody, and transferred him to the NWIPC. Dkt. Nos. 10 ¶ 27; 11-6 at 1–4. ICE revoked Totpal's release under 8 C.F.R. § 241.13(i) because "on November 29, 2006, the Immigration Court ordered [his] removal to Romania[,]" and he "violated the conditions of [his] release as follows since [his] last successful check in date, January 16, 2020." Dkt. No. 11-6 at 2. The Notice then lists Totpal's "Criminal History," including six dismissed charges and five driving-related convictions. *Id.* On July 13, 2026, the Romanian Embassy declined ICE's request for a travel document to effectuate Totpal's removal. Dkt. No. 10 ¶ 29. ICE is now "attempting to identify a third country of removal which [will] accept [Totpal]." *Id.* ¶ 30.

Totpal argues, among other things, that his ongoing detention violates 8 U.S.C. § 1231 because his removal is not reasonably foreseeable. He further argues that his re-detention without notice or an opportunity to be heard violates

procedural due process.[1] Dkt. No. 5 at 4. Totpal asks the Court to order his immediate release subject to the same terms and conditions of his prior OSUP and enjoin Respondents from re-detaining him unless they comply with revocation regulations and provide sufficient evidence to the Court that his removal from the United States is reasonably foreseeable. *Id.* Totpal further asks for an order "prohibiting Respondents from removing him to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings." *Id.* at 12.

## 2. LEGAL STANDARD

Federal courts can grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[1] Totpal also argues that ICE violated its regulatory procedures under 8 C.F.R. § 241.13(i) for revocation of release and the revocation of his release by an unauthorized official violates 8 C.F.R. § 241.4(l)(2)(iii). Dkt. No. 5 at 4. Because the Court grants relief on other grounds, it does not address these arguments.

**2.1 Other equitable relief.**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Petitioners seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying the permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## 3. DISCUSSION

### 3.1 Totpal's continued detention violates due process.

Totpal argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id.* at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Totpal is detained under 8 U.S.C. § 1231(a)(6) because his removal order became administratively final on December 29, 2006, when time to appeal the order lapsed. Dkt. Nos. 10 ¶ 14; 11-3 at 2. Totpal argues the Court should count the aggregate time he spent in immigration detention; specifically, the 110 days he spent at the NWIPC from December 29, 2006, to April 18, 2007, and the over 80

days he has been detained there as of this Order. In aggregate, Totpal has been detained at the NWIPC for over six months. Some district courts have included former periods of detention in their analysis. *See Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) ("Several courts have held that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again"); *Nhean v. Brott*, No. CV 17-28 (PAM/FLN), 2017 WL 2437268, at *2 (D. Minn. May 2, 2017), *report and recommendation adopted*, No. CV 17-28 (PAM/FLN), 2017 WL 2437246 (D. Minn. June 5, 2017) ("The Court is aware of no authority to suggest that the six month presumptively reasonable detention period would start over after [the petitioner] was placed back into ICE custody following revocation of supervised release.").

Respondents do not argue otherwise. They assert that even if Totpal's calculations are correct, his "total confinement under 8 U.S.C. § 1231(a)(6) is just now reaching the presumptive six-month period under *Zadvydas*." Dkt. No. 9 at 10. That the period expired only recently does not save Respondents' position. The six-month period "creates a presumption of reasonableness, not automatic immunity from review," and the *Zadvydas* framework requires the Court to assess not only how long Totpal has been detained, but whether his removal is reasonably foreseeable. *Uprety v. Bondi*, No. 2:25-cv-02443-JNW-MLP, 2026 WL 194227, at *3 (W.D. Wash. Jan. 26, 2026).

Totpal has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. He is stateless, and no country

recognizes him as a citizen. Romania refused to issue a travel document in 2007, Dkt. No. 10 ¶ 15, and refused again on July 13, 2026. And Respondents have identified no third country willing to accept him. Totpal has met his initial burden.

Respondents do not respond with evidence to rebut this showing. Respondents provide only conclusory statements about their overall interest in removing Totpal. Dkt. No. 10 ¶ 30 (stating that ICE is "attempting to identify a third country of removal which [will] accept [Totpal]"). The Court accepts that Respondents may be pursuing third-country removal. *See generally* Dkt. No. 9. But Deportation Officer Subero's declaration does not contain any facts within his personal knowledge regarding any third country's willingness to accept Totpal. These conclusory statements are not enough. *See Lungu v. Raycraft,* No. 1:26-CV-2021, 2026 WL 2122919, at *3 (W.D. Mich. July 23, 2026) (finding no likelihood of removal because Romania refused to issue travel documents for the petitioner who is no longer a citizen of Romania, "the United States does not have a repatriation agreement with Romania," and the respondents have failed to deport the petitioner "after more than eighteen years of trying."); *see also Zheng v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:25-CV-02483-TLF, 2026 WL 850531, at *4 (W.D. Wash. Mar. 27, 2026) ("Based on the respondents' lack of any concrete action under the required process for third party removal, the Court finds petitioner has established there is no significant likelihood of removal in the reasonably foreseeable future."). Because this record provides no good reason to believe that ICE is likely to remove Totpal in the reasonably foreseeable future, release is warranted under *Zadvydas*.

### 3.2 Respondents violated due process by revoking Totpal's OSUP and detaining him.

In addition to his *Zadvydas* claim, Totpal is eligible for habeas relief based on his OSUP revocation. The Fifth Amendment prohibits Respondents from depriving any person of liberty without due process of law. U.S. Const. amend. V. This protection extends to all persons within the United States, including noncitizens. *Zadvydas*, 533 U.S. at 693. So before revoking supervised release and re-detaining a noncitizen, Respondents must satisfy procedural due process. Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required.

This Court has applied that test and finds that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *See Ledesma Gonzalez v. Bostock*, Case No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025); *Vo v. Scott*, No. 2:26-CV-00135-JNW, 2026 WL 445046, at *4 (W.D. Wash. Feb. 17, 2026); *Aslan v. Wamsley*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))).

Respondents disagree. They argue that a noncitizen's interest in remaining free is a reduced one, and that it must yield to the Government's heightened interest in immigration enforcement. Dkt. No. 9 at 10–11, 13–14 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). Even accepting the premise,

Respondents never explain why a reduced interest lets the Government revoke a years-long order of supervision and return a person to custody with no notice and no hearing. A reduced interest is not the same as a forfeited one.

Here, ICE served Totpal with the Notice of Revocation on June 22, 2026—the day he reported to the Portland field office as directed—held an informal interview, and took him into custody the same day. Dkt. No. 10 ¶ 27; Dkt. Nos. 11-6; 11-7. Notice delivered as the deprivation occurs is not advance notice. *See Vo*, 2026 WL 445046, at *5 ("Even taking the Government at its word, the Notice [of Revocation] was handed to [the petitioner] as he was being detained. That is not advance notice.").

Respondents do not dispute that no pre-deprivation notice or hearing occurred. Instead, they argue that pre-deprivation procedure was not required because Totpal's "recent criminal arrest and conviction for Unauthorized Use of a Motor Vehicle, . . . constituted a material change in circumstance," and "[a]ny residual risk of error not addressed by a pre-deprivation hearing [was] adequately mitigated by the availability of post-deprivation process provided in the regulations, which [Totpal] was provided." Dkt. No. 9 at 12. Perhaps re-detention is warranted based on Totpal's conviction, but that does not answer the due process problem. It supplies only an after-the-fact rationale, which courts in this District have found inadequate. *See, e.g.*, *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8 ("[A] post-

deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty.").

Accordingly, Respondents violated Totpal's procedural due process rights, and immediate release is appropriate.

### 3.3 The Court grants in part Totpal's requests for injunctive relief.

Totpal has met the requirements for some, but not all, of his requested injunctive relief. *See eBay*, 547 U.S. at 391. He suffered irreparable injury when he was deprived of his liberty without due process and placed in ICE detention. No monetary remedy can compensate for that constitutional deprivation. The balance of hardships favors Totpal, as the Court will grant an injunction that requires only that Respondents comply with due process before re-detaining him. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause. The Court further finds that injunctive relief is appropriate because Totpal has shown a "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has detained him once already in violation of his due process rights. And Respondents argue in this very case that advance notice and a hearing are not required, showing that they have no intention of voluntarily changing their practices.

### 3.3.1 Respondents must comply with the law if they re-detain Totpal.

Once released, Totpal will remain subject to the terms of his OSUP and thus have a liberty interest in his continued freedom that due process protects. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). For the reasons explained above, due process requires that Totpal receive notice and a pre-deprivation hearing if Respondents intend to revoke his OSUP or otherwise detain him. At any such hearing, Respondents bear the burden of justifying the revocation and re-detention by clear and convincing evidence. *Cf. J.E.H.G. v. Chesnut*, No. 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("Since it is the Government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Federal regulation 8 C.F.R. § 241.13(i) governs OSUP revocation. It permits the Government to revoke an OSUP "if, on account of changed circumstances, [it] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). It also permits OSUP revocation if the noncitizen has violated the conditions of their release. 8 C.F.R. § 241.13(i)(1). So if Respondents seek to re-detain Totpal because they believe there is a significant likelihood that he may be removed in the reasonably foreseeable future, their decision must be supported by changed circumstances. *See Uprety*, 2026 WL 194227, at *4. The mere passage of time will not do, nor will a repeat of the same generalized removal efforts that have yet to produce a country willing to accept Totpal. Indeed, a noncitizen cannot be re-detained merely because he is

subject to removal proceedings. *Chavez v. Casey*, No. 26-CV-03656-BAS-BJW, 2026 WL 2161204, at *2 (S.D. Cal. July 27, 2026).

Totpal asks the Court to go further and require that any such hearing take place in this Court. But there is no requirement that such proceedings happen in district court, and the Court declines to impose one here.

Respondents argue that they need not provide notice or a pre-deprivation hearing because the applicable regulation, 8 C.F.R. § 241.13(i), does not require either. Even if that interpretation is correct—which the Court does not decide—it ignores the procedural protections the Due Process Clause imposes, as discussed above. *See Espinoza Palacios v. Hermosillo,* No. 2:26-CV-491-JNW, 2026 WL 686138, at *6 n.1 (W.D. Wash. Mar. 11, 2026) (collecting cases); *see also Reyes v. Hermosillo*, Case No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statute.").

**3.3.2 Totpal's third-country removal claims are not ripe.**

Respondents say they are seeking third country removal, but they have not designated—or even identified—any third country for removal. Unlike the risk of unlawful re-detention, which ICE has already carried out once, removal to a third country remains hypothetical. As a result, these claims are not ripe, and the Court

declines to address them. If circumstances change, Totpal may seek appropriate relief.

### 3.4 Totpal's motion for counsel is denied.

Totpal requested that the Court appoint counsel to represent him, and submitted a financial affidavit showing that he has no income. Dkt. No. 6. Totpal did not complete the section of the form disclosing his previous efforts to retain an attorney. And because the Court grants Totpal's petition in part, the motion is moot. The Court DENIES the motion. Dkt. No. 6.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. Totpal's petition for a writ of habeas corpus is GRANTED IN PART. Dkt. No. 5.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) HOURS of this order, subject to his prior conditions of release.
3. Petitioner may not be re-detained unless Respondents provide him with written notice and a pre-deprivation hearing to respond to and contest the decision. At any future re-detention hearing, Respondents will bear the burden of proving that revocation of release and re-detention are lawful and warranted by clear and convincing evidence.
4. All other requested relief is DENIED WITHOUT PREJUDICE as stated in this order.

Dated this 16th day of September, 2026.

Jamal N. Whitehead
United States District Judge